UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

Katrina Williams,

                     Plaintiff,

       -against-

Commissioner of Social Security,

                    Defendant.

--------------------------------------------------------------------X

                                         **MEMORANDUM & ORDER**
                                          20-CV-02665 (DG)

DIANE GUJARATI, United States District Judge:

On June 16, 2020, Plaintiff Katrina Williams commenced this action against Defendant Commissioner of Social Security (the "Commissioner"), seeking review pursuant to 42 U.S.C. § 405(g) of an Administrative Law Judge's March 26, 2019 decision finding Plaintiff ineligible for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  *See generally* Complaint ("Compl."), ECF No. 1; Certified Administrative Record ("R.") 11-21, ECF No. 9.

Now before the Court are Plaintiff's Motion for Judgment on the Pleadings, *see* Notice of Motion for Judgment on the Pleadings ("Motion"), ECF No. 10; Memorandum of Law in Support of Plaintiff's Motion ("Pl.'s Br."), ECF No. 10-1, and the Commissioner's Cross-Motion for Judgment on the Pleadings, *see* Notice of Cross-Motion ("Cross-Motion"), ECF No. 12; Memorandum of Law in Support of Defendant's Cross-Motion and in Opposition to Plaintiff's Motion ("Comm'r's Br."), ECF No. 12-1, both made pursuant to Federal Rule of Civil Procedure 12(c).

For the reasons set forth below, Plaintiff's Motion is granted, and the Commissioner's Cross-Motion is denied.  This case is remanded for further proceedings consistent with this Memorandum & Order.[1]

## BACKGROUND

### I.     Procedural History

On or about August 3, 2016, Plaintiff filed an application for DIB, alleging disability beginning on April 7, 2016.  R. 11; *see also* R. 122 (reflecting that Plaintiff's application was completed on August 4, 2016).  Plaintiff's application was initially denied on October 13, 2016. R. 59-63.

After requesting a hearing on December 5, 2016, R. 66, Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Gloria Pellegrino on October 10, 2018, R. 26-47.  By decision dated March 26, 2019, the ALJ determined that Plaintiff was not disabled and therefore was not entitled to DIB.  R. 11-21.  The ALJ's decision became final on April 22, 2020, when the Appeals Council of the Social Security Administration's Office of Appellate Operations denied Plaintiff's request for review of the ALJ's decision.  R. 1-3; *see also* 20 C.F.R. § 422.210.  Plaintiff timely commenced this action on June 16, 2020.  *See* Compl. at 2; *see also* 42 U.S.C. § 405(g).

### II.    The ALJ's Decision

In evaluating disability claims, an ALJ must adhere to a five-step inquiry.  The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the

---

[1]  Plaintiff seeks reversal of the March 26, 2019 decision of the Administrative Law Judge and "remand for approval of the claim and calculation of benefits," or, in the alternative, "remand[] for further administrative proceedings, including a new hearing."  Pl.'s Br. at 20.  The relief the Court grants herein is remand for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. *Id.*; *see also* 20 C.F.R. § 404.1520(b). If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe medically determinable physical or mental impairment that meets the [applicable] duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. *Id.*; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 7, 2016, R. 13 (citing 20 C.F.R. § 404.1571 *et seq.*), and that Plaintiff suffered from the following severe impairments: third degree burn on leg, third degree burn on fingers, leg spasms, and depression, R. 13 (citing 20 C.F.R. § 404.1520(c)).

Having determined that Plaintiff satisfied her burden at the first two steps, the ALJ proceeded to the third step of the inquiry. At that step, an ALJ considers whether any of the claimant's impairments meets or equals one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1.[2] In this case, the ALJ concluded that none of Plaintiff's impairments or combination of impairments met or equaled the severity of any of the impairments in the Listings. R. 13-15. The ALJ thus proceeded to the fourth step of the inquiry.

---

[2] If the ALJ concludes at step three that the claimant's impairment(s) meets or equals one of the impairments in the Listings, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

At the fourth step, an ALJ assesses the claimant's residual functional capacity ("RFC") and the claimant's past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).[3]  If the claimant can still do the claimant's past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv); *see also* 20 C.F.R. § 404.1520(f).  In this case, at the fourth step, the ALJ found that Plaintiff had the RFC required to perform "sedentary work as defined in 20 CFR 404.1567(a)," but with certain limitations, namely: "no hazards such as dangerous moving machinery or unprotected heights; no climbing ladders, ropes or scaffolds; occasional crawling or kneeling; occupations performed in a low stress setting, defined as requiring no assembly line, no fast paced production requirements, no more than occasional changes in work routine or work setting and little independent decision making or goal setting."  R. 15.  Relying on the RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as an "assistant manager retail sales . . . and freight thrower."  R. 20.

At step five, an ALJ must determine whether the claimant – given the claimant's RFC, age, education, and work experience – has the capacity to perform other substantial gainful work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)-(h); *see also* 20 C.F.R. § 404.1560(c).  In this case, the ALJ, relying on the testimony of a vocational expert, determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely:

> document preparer . . . of which there are approximately 40,415 jobs in the U.S. National Economy; charge account clerk . . . of which there are approximately 21,999 jobs in the U.S. National Economy and order clerk . . . of which there are approximately 12,556 jobs in the U.S. National Economy.

---

[3] A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).  To determine the claimant's RFC, the ALJ must consider, *inter alia*, the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

4

R. 21.

Accordingly, the ALJ concluded that Plaintiff was not "disabled," as defined in the Social Security Act, from April 7, 2016 through the date of the ALJ's decision. *Id.*; *see also* 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

## III.    The ALJ's Assessment of Opinion Evidence

In reaching the above decision, the ALJ accorded varying degrees of weight to the opinions of certain medical professionals with respect to both Plaintiff's physical and mental functioning. *See* R. 19.

With respect to Plaintiff's physical functioning, the ALJ gave "great weight" to the opinion of consultative examiner Dr. Olga Yevsikova. *Id.* Dr. Yevsikova examined Plaintiff on September 22, 2016, R. 234-38, relatively soon after Plaintiff's alleged disability first presented on approximately April 7, 2016, *see* R. 205-12, 16-17. Plaintiff informed Dr. Yevsikova, *inter alia*, that she had been suffering from right knee pain since April 2016, when an LG lithium battery exploded, resulting in third-degree burns on Plaintiff's right knee and right upper thigh above the knee. *See* R. 17, 234. After examining Plaintiff – including, *inter alia*, her gait, ability to stand and squat, range of motion, and strength – Dr. Yevsikova diagnosed Plaintiff with right knee pain, right leg and right knee third degree burn, right leg pain, low back pain, right hip pain, and depression. *See* R. 17, 19, 234-37. Dr. Yevsikova assessed Plaintiff as having moderate limitations to: heavy lifting, heavy carrying, pulling, pushing, bending, prolonged walking, prolonged standing, prolonged sitting, climbing stairs, squatting, and kneeling. *See* R. 17, 19, 237. Dr. Yevsikova advised that Plaintiff should avoid unprotected heights and any activity that could put her at risk of a fall. *Id.*

Also with respect to Plaintiff's physical functioning, the ALJ considered two opinions given by Dr. Irving Friedman, Plaintiff's treating physician. R. 17-19. First, the ALJ accorded "limited weight" to an opinion of Dr. Friedman dated June 21, 2017, R. 18-19, wherein Dr. Friedman opined that Plaintiff "remains totally and painfully disabled at this time," R. 243-49. In that opinion, Dr. Friedman noted that he had been "following [Plaintiff] since November 15, 2016 with specific reference to severe trauma sustained to the right lower extremity, i.e. an E-cigarette battery exploded in her pocket pants while she was driving a car on April 7, 2016." R. 243. Citing a series of medical records and physical examinations ranging in dates from April 7, 2016 to June 21, 2017, Dr. Friedman opined that Plaintiff had sustained the following deficits: second and third degree burns right anterolateral thigh; permanent scarring right anterolateral thigh 20 cm. horizontal and 10 cm. vertical; post-traumatic right knee arthropathy; chronic post-traumatic lumbar myofascitis/spasm with right-sided radiculopathy; suspected traumatically induced lumbosacral discogenic disease; development of CRPS right lower extremity with hyperpathia, hyperesthesia, dyesthesia, and allodynia, especially over the area of extensive scarring; gait disorder secondary to above; and chronic pain syndrome with affective disturbances, including agitated depression, insomnia, and frequent flashbacks. R. 245-48.

Second, the ALJ accorded "great weight" to another opinion of Dr. Friedman, dated January 4, 2019, in the form of a document titled "Medical Assessment of Ability to Do Work-Related Activities." *See* R. 18-19, 333-35. On that form, Dr. Friedman indicated that Plaintiff could lift and carry less than ten pounds occasionally; lift and carry less than ten pounds frequently; stand and/or walk (with normal breaks) for a total of less than two hours in an eight-hour workday; and sit (with normal breaks) for a total of less than six hours in an eight-hour workday. *See* R. 18, 333-34. Dr. Friedman further opined that Plaintiff's ability to push or pull

6

was limited in her lower extremities.  R. 18, 334.  He also opined that Plaintiff had chronic pain with agitated depression.  R. 18, 335.

With respect to Plaintiff's mental functioning, the ALJ gave "little weight" to the opinion of consultative examiner Dr. Toul Georgiou, who examined Plaintiff on September 22, 2016. R. 18-19, 231-33.  Dr. Georgiou noted that Plaintiff had difficulty falling asleep and a loss of appetite.  R. 231.  Dr. Georgiou indicated that Plaintiff had depressive symptoms including dysphoric moods, crying spells, loss of interest, loss of pleasure, social withdrawal, concentration difficulties, and fatigue.  *Id.*  Dr. Georgiou diagnosed Plaintiff with unspecified depressive disorder.  R. 233.

Also with respect to Plaintiff's mental functioning, the ALJ gave "great weight" to the opinion of a "state agency medical consultant" named McClintock, who, on October 7, 2016, opined that Plaintiff had: mild limitations in activities of daily living; mild limitations in maintaining social functioning; mild limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation.  R. 19, 51-52, 56, 58.[4]

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits.  *See* 42 U.S.C. § 405(g).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the [Social Security Administration's ("SSA")] conclusions were supported by substantial evidence in the record and were based on a correct

---

[4]  The parties dispute McClintock's credentials.  *Compare* Pl.'s Br. at 6-7 n.3 (noting that McClintock "appears to be a case reviewer"), *with* Comm'r's Br. at 7, 24 (explaining that McClintock is a psychiatrist).  The Court need not – and does not – resolve this issue as it does not bear on the Court's analysis herein.

legal standard." *Talavera*, 697 F.3d at 151 (quotation marks omitted); *see also Greek v. Colvin*, 802 F.3d 370, 374 (2d Cir. 2015) (explaining that a court "may set aside the Commissioner's decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole").

If there is substantial evidence in the record to support the Commissioner's findings as to any fact, the findings shall be conclusive.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (alteration accepted) (quotation marks omitted).  In determining whether the Commissioner's findings were supported by substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation marks omitted).

In conducting this review, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). "While the ALJ need not resolve every conflict in the record, 'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-69 (S.D.N.Y. 2010) (alteration in original) (citation omitted) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).  The ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (quoting *Calzada*, 753 F. Supp. 2d at 269).  "When the record contains testimony tending to contradict the

8

ALJ's conclusion, the ALJ must acknowledge the contradiction and explain why the conflicting testimony is being disregarded." *Arias v. Astrue*, No. 11-CV-01614, 2012 WL 6705873, at *2 (S.D.N.Y. Dec. 21, 2012) (citing *Valente v. Sec'y of Health & Hum. Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)).

## DISCUSSION

Here, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that the ALJ failed to properly apply the relevant legal standards.  Pl.'s Br. at 7-8.  Specifically, Plaintiff argues: (1) that the ALJ's adjudication with respect to Plaintiff's physical capacities runs afoul of the treating physician rule, *see id.* at 10-13; (2) that the ALJ improperly assessed opinion evidence with respect to Plaintiff's mental capacity, *see id.* at 13-15; and (3) that the ALJ, in reaching her decision, relied upon vocational expert testimony predicated on hypotheticals that did not reflect the full range and severity of Plaintiff's exertional, postural, and mental restrictions, *see id.* at 15.  For the reasons set forth below, the Court remands this case for further proceedings consistent with this Memorandum & Order.

**I.    The ALJ Failed to Follow the Then-Applicable Treating Physician Rule in Assessing Plaintiff's Physical Ability**

As relevant to this case, "[w]ith respect to the nature and severity of a claimant's impairment(s), the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alterations accepted) (citation omitted) (quotation marks omitted). The treating physician rule provides:

> Generally, we give more weight to opinions from your treating sources . . . .  If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in your case record, we will give it controlling
weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[5]

An ALJ "must follow" specific procedures "in determining the appropriate weight to
assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).
"First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "The
opinion of a claimant's treating physician as to the nature and severity of an impairment is given
'controlling weight' so long as it 'is well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the
case record.'" *Id.* (alterations accepted) (quoting *Burgess*, 537 F.3d at 128).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must
determine how much weight, if any, to give it." *Id.* In deciding how much weight to assign to
the opinion, the ALJ "must 'explicitly consider' the following, nonexclusive '*Burgess* factors':
'(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence

---

[5] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are
now to weigh all medical evaluations, regardless of their source, based on how well supported
they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520c,
416.920c; *Cortese v. Comm'r of Soc. Sec.*, 16-CV-04217, 2017 WL 4311133, at *3 n.2
(S.D.N.Y. Sept. 27, 2017). Claims filed before March 27, 2017, however, are still subject to
the treating physician rule. *See* 20 C.F.R. §§ 404.1527 ("For claims filed (see § 404.614)
before March 27, 2017, the rules in this section apply. For claims filed on or after March 27,
2017, the rules in § 404.1520c apply."), 416.927 ("For claims filed (see § 416.325) before
March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017,
the rules in § 416.920c apply."). Here, Plaintiff filed her claim on or about August 3, 2016.
*See* R. 11, 122. Accordingly, the Court applies the treating physician rule in the instant case.
*See, e.g., Conetta v. Berryhill*, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019); *Shepherd v.
Comm'r of Soc. Sec.*, No. 19-CV-01980, 2020 WL 6363908, at *3 (E.D.N.Y. Oct. 29, 2020)
("While the Act was amended effective March 27, 2017 to eliminate the treating physician
rule, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's
application was filed before the new regulations went into effect." (alterations accepted)
(quotation marks omitted)).

supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95-96 (quoting *Selian*, 708 F.3d at 418); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); *Roytman v. Comm'r of Soc. Sec.*, No. 19-CV-03626, 2020 WL 5848615, at *8 (E.D.N.Y. Sept. 30, 2020) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).  The ALJ must "give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Estrella*, 925 F.3d at 96 (alterations accepted) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id.* (quoting *Selian*, 708 F.3d at 419-20).  "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,'" the district court is "unable to conclude that the error [i]s harmless," making remand appropriate, so that the ALJ can "comprehensively set forth its reasons." *See id.* (alterations accepted) (quoting *Halloran*, 362 F.3d at 33); *see also LaFerrera ex rel. M.J.S. v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 308, 324 (E.D.N.Y. 2017) ("The failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand." (quoting *Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009))); *Donacien v. Comm'r of Soc. Sec.*, No. 19 CV-01528, 2021 WL 695121, at *12 (E.D.N.Y. Feb. 23, 2021) ("[I]ncorrect application of the treating physician rule . . . [is] grounds for remand."); *Day v. Astrue*, No. 09-CV-00131, 2011 WL 1467652, at *15 (E.D.N.Y. Apr. 18, 2011) ("[F]ailure to follow the treating physician rule is a failure to apply the proper legal standard and is grounds for reversal.").  However, if a "searching review of the record" reveals that "the substance of the treating physician rule was not traversed," the ALJ's decision may stand.  *See Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 33).

### A.      Dr. Friedman's January 4, 2019 Opinion

In assessing Plaintiff's RFC, the ALJ purported to give "great weight" to the January 4, 2019 opinion of Dr. Friedman, Plaintiff's treating physician.  *See* R. 18-19; R. 19 ("Dr. Friedman has established a treatment relationship with the claimant and is most familiar with her condition.").  However, the ALJ arrived at an RFC inconsistent with that opinion without explaining her reasoning for departing from Dr. Friedman's opinion as a treating physician, making remand appropriate here.

In his January 4, 2019 opinion, Dr. Friedman opined that Plaintiff could stand and/or walk (with normal breaks) for a total of less than two hours in an eight-hour workday, and sit (with normal breaks) for a total of less than six hours in an eight-hour workday.  R. 334.  A claimant with such limitations generally lacks the RFC to perform sedentary work.  *See* 20 C.F.R. § 404.1567 ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); SSR 83-10, 1983 WL 31251, at *5 (1983) (explaining that "occasional[]" walking and standing generally involves *no more than* about two hours of standing or walking and approximately six hours of sitting in an eight-hour workday); *see also Nieto v. Comm'r of Soc. Sec.*, No. 20-CV-03138, 2021 WL 1784317, at *1 (E.D.N.Y. May 5, 2021) (explaining that treating physician's estimation "that plaintiff could stand and walk for less than two hours and could sit for less than six hours . . . mean[t] plaintiff [could not] do sedentary work").  Although a claimant with difficulties standing/walking or sitting may be able to perform sedentary work by alternating between sitting and standing periodically, *see* SSR 96-9p, 1996 WL 374185, *7 (July 2, 1996), the claimant's "RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing," *Wendy H. v.*

12

*Comm'r of Soc. Sec.*, No. 19-CV-00744, 2020 WL 2559915, at *7 (N.D.N.Y. May 20, 2020)
(quotation marks omitted).

Nevertheless – and despite claiming to accord "great weight" to Dr. Friedman's January
4, 2019 opinion – the ALJ concluded that Plaintiff did, indeed, possess an RFC permitting her to
perform sedentary work.  R. 15.  And, although the ALJ did include certain limitations on
Plaintiff's ability to perform sedentary work – *e.g.*, "no hazards such as dangerous moving
machinery or unprotected heights; no climbing ladders, ropes or scaffolds; [and] occasional
crawling or kneeling" – none of the ALJ's limitations accounted for Plaintiff's difficulties
standing/walking and sitting.  *See id.*  Thus, putting aside the ALJ's use of the word "great" as
opposed to "controlling" in describing the weight owed to Dr. Friedman's January 4, 2019
opinion, it is apparent that the ALJ did not, in effect, give that opinion controlling weight.  *See*
*Maenza v. Colvin*, No. 14-CV-06596, 2016 WL 1247210, at *11-13 (W.D.N.Y. Mar. 24, 2016)
(remanding where ALJ purported to give "great weight" to a treating physician's opinion but
"inexplicably" failed to mention or discuss certain limitations from an RFC questionnaire
completed by the treating physician).[6]

---

[6] The Commissioner correctly points out that the United States Court of Appeals for the Second
Circuit has explained that "[t]he regulations do not mandate the presumption that all sedentary
jobs in the United States require the worker to sit without moving for six hours, trapped like a
seat-belted passenger in the center seat on a transcontinental flight."  *See* Comm'r's Br. at 22
(quoting *Halloran*, 362 F.3d at 33).  Here, though, Dr. Friedman's opinion did not contain such
a presumption.  In fact, he opined that Plaintiff could sit less than six hours total in an eight-
hour workday, *even with normal breaks*.  R. 334.  In any event, *Halloran* indicates that a
claimant's difficulties with standing/walking and sitting for prolonged periods of time do not
*necessarily* preclude the conclusion that the claimant can perform sedentary work.  *Halloran*
does not free an ALJ of the obligation to craft an RFC assessment "specific as to the frequency
of the individual's need to alternate between sitting and standing," when confronting a
claimant with such limitations.  *See Wendy H.*, 2020 WL 2559915, at *7 (quotation marks
omitted).  Indeed, in *Halloran* itself, the ALJ found that the plaintiff could perform sedentary
work *with specific limitations* accounting for the plaintiff's inability to stand and walk for more
than two hours per day, and inability to sit for six hours per day.  *See Halloran*, 362 F.3d at 33

Nor did the ALJ give "good reasons" for departing from Dr. Friedman's January 4, 2019 opinion, much less explicitly analyze the *Burgess* factors in discounting that opinion. *See Estrella*, 925 F.3d at 96 (quotation marks omitted). Indeed, the ALJ did not address Dr. Friedman's opinion with respect to Plaintiff's difficulties standing/walking and sitting *at all*. *See Gomez v. Saul*, No. 19-CV-09278, 2020 WL 8620075, at *22 (S.D.N.Y. Dec. 23, 2020) (concluding that remand was appropriate where ALJ, "[w]hen determining that Plaintiff's arthritis was mild[,] . . . did not mention [the treating physician's] conclusion regarding the severity of Plaintiff's right shoulder arthritis, let alone explain his reasoning for not assigning it controlling weight"), *report and recommendation adopted sub. nom.*, *Gomez v. Comm'r of Soc. Sec.*, 2021 WL 706744 (S.D.N.Y. Feb. 22, 2021); *see also Maenza*, 2016 WL 1247210, at *13 (remanding based on ALJ's failure to follow treating physician rule and noting: "the ALJ's decision [n]ot to discuss several of [the treating physician's] proposed limitations in the RFC assessment while simultaneously claiming to give [the treating physician's] medical opinion great weight strikes the Court as particularly problematic"); *Wilson v. Astrue*, No. 09-CV-02354, 2010 WL 1534191, at *4 (D. Kan. Mar. 31, 2010) (recommending reversal where "[t]he ALJ did not even acknowledge that there [wa]s an inconsistency between the RFC assessment and [a treating physician's] opinion, or that there [wa]s an inconsistency between [the ALJ's] determination to accord 'great weight' to [the treating physician's] opinion and his determination [of plaintiff's RFC]"), *report and recommendation adopted*, 2010 WL 1534198 (D. Kan. Apr. 16, 2010).

---

(noting ALJ's decision that plaintiff could perform sedentary work if "she is given several breaks or allowed to change positions often"). Here, the ALJ did not account at all for the limitations set forth in Dr. Friedman's January 4, 2019 opinion.

It appears that the ALJ, rather than treating Dr. Friedman's January 4, 2019 opinion as controlling with respect to Plaintiff's difficulties with standing/walking and sitting, may have instead relied on the September 22, 2016 opinion of consultative examiner Dr. Yevsikova, wherein Dr. Yevsikova opined that Plaintiff had only "moderate" limitations with respect to prolonged walking, prolonged standing, and prolonged sitting.  *See* R. 17, 19, 237.  Notably – and somewhat confusingly – the ALJ also purported to give Dr. Yevsikova's opinion "great weight," despite its seeming tension with Dr. Friedman's January 4, 2019 opinion.  *See* R. 19.

There are good reasons to doubt whether Dr. Yevsikova's opinion warranted "great weight," let alone constituted a "good reason" to discredit Dr. Friedman's opinion.  First, Dr. Yevsikova acted as a consultative examiner, and, as relevant here, "[o]pinions of a consultative physician should be afforded 'little weight' because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'"  *Emsak v. Colvin*, No. 13-CV-03030, 2015 WL 4924904, at *12 (E.D.N.Y. Aug. 18, 2015) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  Second, Dr. Yevsikova's description of Plaintiff's limitations relied greatly on the term "moderate."  R. 237.  And, "'[w]hile the opinions of treating or consulting physicians need not be reduced to any particular formula,' the [Second] Circuit has held that consultative opinions that merely use the terms 'moderate' and 'mild' in describing limitations, without more, are typically 'so vague as to render [them] useless in evaluating' the claimant's RFC."  *Adesina v. Astrue*, No. 12-CV-03184, 2014 WL 5380938, at *9 (E.D.N.Y. Oct. 22, 2014) (alterations in original) (quoting *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds*, 20 C.F.R. § 404.1560, *as recognized in Selian*, 708 F.3d at 421).  Third, Dr. Yevsikova issued her opinion on September 22, 2016, well over *two years* before Dr. Friedman

15

issued his January 4, 2019 opinion. *See Valderrama v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 141, 147 (E.D.N.Y. 2019) ("Two of these medical opinions were given two years before [the treating physician's] assessment . . . rendering them of limited probative value in rebutting the opinion of . . . Plaintiff's treating physician." (citation omitted)).

Even putting those considerations aside, the ALJ did not sufficiently reconcile Dr. Yevsikova's September 22, 2016 opinion with Dr. Friedman's January 4, 2019 opinion. Of course, as the Commissioner notes, the ALJ may permissibly "choose between properly submitted medical opinions." *Gentles v. Comm'r of Soc. Sec.*, 848 F. App'x 56, 57 (2d Cir. 2021). Here, though, the ALJ did not *choose* between Dr. Friedman's and Dr. Yevsikova's opinions. Rather, the ALJ accorded both the same weight despite their apparent contradictions and then arrived at an RFC assessment without ever reconciling these conflicting opinions. *See* R. 18-21. This error forms its own separate basis for remand, as the ALJ is "required to reconcile materially divergent medical opinions in determining the RFC of the plaintiff." *Brown v. Colvin*, No. 14-CV-02411, 2015 WL 4878480, at *23 (E.D.N.Y. Aug. 14, 2015); *see also Selembo v. Comm'r of Soc. Sec.*, No. 19-CV-02902, 2021 WL 1428599, at *6 (E.D.N.Y. Apr. 15, 2021) (noting that "an ALJ's failure to reconcile . . . materially divergent RFC opinions of medical sources is a ground for remand" and that "[t]his is especially true where the ALJ discounts the opinion of the treating physician" (alterations accepted) (citations omitted) (quotation marks omitted)). In any event, Dr. Yevsikova's opinion – at least without any analysis reconciling that opinion with Dr. Friedman's contradictory conclusions – cannot form a "good reason" for assigning Dr. Friedman's January 4, 2019 opinion less-than-controlling weight.

Because the ALJ failed to give any reasons – much less "good reasons" – for giving less-than-controlling weight to Dr. Friedman's January 4, 2019 opinion, the Court is unable to conclude that the ALJ's error was harmless.  *See Estrella*, 925 F.3d at 96; *see also, e.g.*, *Damiano v. Comm'r of Soc. Sec.*, No. 15-CV-01074, 2019 WL 2330853, at *9 (E.D.N.Y. May 31, 2019).  Furthermore, not even a searching review of the record assures the Court that the "substance of the treating physician rule was not traversed" here.  *See Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).  Accordingly, remand is appropriate so that the ALJ can properly consider what weight, if any, to accord Dr. Friedman's January 4, 2019 opinion and, if the ALJ resolves to accord that opinion less-than-controlling weight, so that the ALJ can set forth sufficient reasons for doing so.  *See id.*; *see also Damiano*, 2019 WL 2330853, at *7 (remanding where "the ALJ did not cite 'good reasons' for assigning less-than-controlling weight to the opinion of Plaintiff's treating physician"); *Ridge v. Berryhill*, 294 F. Supp. 3d 33, 59 (E.D.N.Y. 2018) ("Here, remand is appropriate because the ALJ failed to give 'good reasons' for according less than controlling weight to the opinions of plaintiff's treating physicians.").

## B.     Dr. Friedman's June 21, 2017 Opinion

The ALJ accorded "limited weight" to an opinion of Dr. Friedman dated June 21, 2017, wherein Dr. Friedman opined that Plaintiff "remains totally and painfully disabled at this time." R. 18-19, 243-49.  As an initial matter, the Court notes that the ALJ did not expressly consider the *Burgess* factors in resolving to accord this opinion less-than-controlling weight.  Thus, whether the ALJ's decision to accord this opinion "limited weight" violates the treating physician rule such that remand is appropriate turns on whether the ALJ "otherwise provided 'good reasons' for [her] weight assignment."  *Estrella*, 925 F.3d at 96 (alterations accepted) (quotation marks omitted).  As to that analysis, the ALJ offered two reasons for according this

17

opinion only "limited weight," despite Dr. Friedman's status as a treating physician: first, that

this opinion was "time-limited" and, second, that "the issue of disability is an issue reserved to

the Commissioner."  R. 19.

Beginning with the latter point, and as relevant here, it is true that treating source

opinions on issues reserved to the Commissioner – including on ultimate findings of disability –

are not entitled to controlling weight or special significance.  *See* SSR 96-5p, 1996 WL 374183,

*1 (July 2, 1996); *Damiano*, 2019 WL 2330853, at *8.[7]  However, Dr. Friedman's June 21, 2017

opinion did not concern only the ultimate issue of Plaintiff's disability.  Rather, Dr. Friedman

also opined, *inter alia*, that Plaintiff's gait was "significantly impaired," that she had "constant

nociceptive pain of the right lower extremity," and that she required "chronic pain management."

R. 248.  And Dr. Friedman based these conclusions on a physical examination of Plaintiff

conducted upon seeing her for neurologic follow up and pain management.  R. 247.  Although

the ALJ permissibly declined to grant controlling weight or special significance to Dr.

Friedman's opinion that Plaintiff was "totally and painfully disabled," R. 19, 248, the ALJ erred

insofar as she did not grapple with these other conclusions in Dr. Friedman's June 21, 2017

opinion solely on the basis that ultimate conclusions as to disability are reserved to the

Commissioner.  *See Damiano*, 2019 WL 2330853, at *8 (concluding that ALJ erred in giving

less-than-controlling weight to the treating physician's opinion on the basis that "findings of

disability are reserved to the Commissioner," because the treating physician "did not opine only

---

[7] The SSA rescinded SSR 96-5p in March 2017.  *See* Rescission of Social Security Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928305, at *1 (S.S.A. Mar. 27, 2017).  However, that recission affects only those "claims filed on or after March 27, 2017."  *See id.*; *see also Palistrant v. Comm'r of Soc. Sec.*, No. 16-CV-00588, 2018 WL 4681622, at *4 n.5 (W.D.N.Y. Sept. 28, 2018).  Accordingly, SSR 96-5p applies to Plaintiff's claim, as her application was filed on or about August 3, 2016.  *See* R. 11, 122.

as to Plaintiff's disability status"); *see also Schilling v. Colvin*, No. 11-CV-00176, 2013 WL
1246772, at *5 (E.D.N.C. Mar. 26, 2013) ("Here, [the treating physician] did not only opine that
plaintiff was disabled, but rather he stated that she could not perform sedentary work activities
due to chronic pain, and that this conclusion was based upon clinical observations and other
medical evidence, including reference to imaging studies.").

Turning to the ALJ's reasoning that Dr. Friedman's June 21, 2017 opinion warranted
only "limited weight" because the conclusions drawn therein were limited in time, as indicated
by Dr. Friedman's comment that Plaintiff "remains totally and painfully disabled *at this time*,"
R. 19 (emphasis added); *see also* R. 248, the Court concludes that this was not a sufficiently
good reason to assign Dr. Friedman's June 21, 2017 opinion less-than-controlling weight.
Although Dr. Friedman's use of the phrase "at this time" does, indeed, limit his conclusion that
Plaintiff was disabled, Dr. Friedman included no such temporal limitation with respect to his
other conclusions – *e.g.*, that Plaintiff's gait was significantly impaired and that she had constant
nociceptive pain of the right lower extremity.  *See* R. 248.  Indeed, his opinion noted that
Plaintiff's extensive scarring was "*permanent* in nature" and that she would require "further
chronic pain management" and "orthopedic follow up of her right knee as well as her lumbar
spine." *Id.* (emphasis added).  Dr. Friedman's conclusions are thus unlike those permissibly
rejected as "time-limited" by ALJs in other cases.  *See, e.g.*, *Del Valle v. Comm'r*, No. 17-CV-
01158, 2019 WL 642780, at *4 (W.D.N.Y. Feb. 15, 2019) (concluding that ALJ was correct to
discount time-limited opinions where the opinions were "post-operative instructions *without any
indication of permanence*" (emphasis added)).

Moreover, there is additional evidence in the record contradicting the ALJ's
determination that Dr. Friedman's conclusions were time-limited in nature.  Namely, Dr.

Friedman continued to treat Plaintiff, regularly noting the persistence of her symptoms through January 4, 2019.  *See, e.g.*, R. 309 (noting that, as of July 31, 2017, Plaintiff "had constant nociceptive pain of the right lower extremity" and an impaired gait), R. 309 (noting that, as of September 27, 2017, Plaintiff's gait remained impaired), R. 309-10 (noting that, as of December 8, 2017, Plaintiff "could not fully weight-bear on the right lower extremity" and "had exquisite pain with minimal flexion and extension at the right knee"), R. 310 (noting that, on February 9, 2018 and April 11, 2018, Plaintiff "had constant nociceptive pain with extreme tenderness with minimal flexion and extension of the right knee" and "was not able to forward flex or squat without extreme pain"), R. 310 (noting that, on May 4, 2018 and June 8, 2018, Plaintiff "had constant nociceptive pain of the right lower extremity"), R. 310-11 (noting that, on July 12, 2018 and September 6, 2018, Plaintiff's "gait was impaired" and that "[s]he was exquisitely sensitive to light touch throughout the distal right lateral thigh including the right knee joint"), R. 312 (noting that, as of December 3, 2018, Plaintiff was experiencing "[g]ait disorder" and "[c]hronic pain syndrome," and "remain[ed] totally and painfully disabled"); *see also* R. 312 (noting, on December 3, 2018, that "[t]he above post-traumatic deficits and scarring and internal derangement of the right knee are *permanent* in nature" (emphasis added)).[8]  The ALJ's decision makes no reference to these conclusions, despite their apparent contradiction of the ALJ's conclusion that Dr. Friedman's observations were time-limited.  *See Arias*, 2012 WL 6705873, at *2 ("When the record contains testimony tending to contradict the ALJ's conclusion, the ALJ must acknowledge the contradiction and explain why the conflicting testimony is being

---

[8]  These conclusions derive from a "narrative summary of neurologic follow up care and chronic pain management rendered to Ms. Katrina Williams," completed by Dr. Friedman and dated December 3, 2018.  R. 309-13.  The ALJ did not discuss the December 3, 2018 summary.

disregarded.").[9]

In sum, the ALJ neither expressly addressed the *Burgess* factors nor provided other "good reasons" for according less-than-controlling weight to Dr. Friedman's June 21, 2017 opinion. *See Estrella*, 925 F.3d at 96.  And the Court cannot otherwise conclude that the "substance of the treating physician rule was not traversed."  *Id.* (quoting *Halloran*, 362 F.3d at 32).  Accordingly, remand is appropriate on this basis as well, so that the ALJ can properly assess the weight owed to Dr. Friedman's June 21, 2017 opinion and, if the ALJ resolves to accord that opinion less-than-controlling weight, so that the ALJ can set forth sufficient reasons for doing so.  *See Ridge*, 294 F. Supp. 3d at 59.

## II.     The Hypothetical Question Posed to the Vocational Expert Reflected a Flawed RFC Assessment

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (alteration accepted) (citations omitted) (quotation marks omitted); *see also Williams v. Comm'r of Soc. Sec.*, No. 19-CV-03687, 2021 WL 84277, at *7 (E.D.N.Y. Jan. 11, 2021).  "In cases [w]here the [ALJ's] RFC assessment is supported by substantial evidence, [the] ALJ may present a vocational expert with a hypothetical based upon that RFC assessment."  *Vazquez v. Colvin*, No. 15-CV-00485, 2016

---

[9] The Court notes that the ALJ also may have erred by failing to address or weigh the opinions noted in the December 3, 2018 "narrative summary" completed by Dr. Friedman, R. 309-13. *See Barrett v. Colvin*, 211 F. Supp. 3d 567, 581 (W.D.N.Y. 2016) ("Remand is required when an ALJ fails to adequately evaluate the weight of a medical opinion in light of the factors set forth in 20 C.F.R. § 404.1527(c).").  Because the Court remands for other reasons, the Court need not – and does not here – determine whether this potential error serves as a separate basis for remand.

WL 5173278, at *9 (N.D.N.Y. Sept. 20, 2016) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 35 (2d Cir. 2013)).

Here, the hypothetical presented by the ALJ was whether there existed "other jobs in the national economy for someone with [Plaintiff's] RFC," which the ALJ defined as the capacity to "perform[] sedentary work as defined by the regulations . . . [with] the following limitations: No hazards such as dangerous moving machinery or unprotected heights.  No climbing of ropes, ladders, or scaffolds.  Occasional crawling or kneeling.  Occupations performed in a low-stress setting defined as: no assembly line, no fast-paced production requirements, no more than occasional changes in the work routine or work setting, and little independent decision-making or goal setting."  R. 45-46.  This hypothetical almost identically tracked the RFC assessment ultimately included in the ALJ's decision.  *Compare* R. 15, *with* R. 45.

As explained above, though, the ALJ's RFC assessment was flawed insofar as it was conducted in violation of the treating physician rule.  Because the hypothetical posed to the vocational expert was premised on a flawed RFC assessment, the Court cannot conclude that the hypothetical "accurately reflect[ed] the limitations and capabilities of the claimant."  *McIntyre*, 758 F.3d at 151; *see also Emsak*, 2015 WL 4924904, at *17 (concluding that, because "the ALJ's RFC findings [were] not supported by substantial evidence and did not incorporate the non-exertional limitations found by Plaintiff's treating sources, the hypothetical question presented by the ALJ failed to accurately reflect the limitations and capabilities of the claimant involved" (quotation marks omitted)).  Accordingly, on remand, the ALJ must assess Plaintiff's ability to perform work existing in the national economy, this time based on an accurate and complete RFC assessment.  *See Emsak*, 2015 WL 4924904, at *17; *Restuccia v. Colvin*, No. 13-CV-03294, 2014 WL 4739318, at *9 (S.D.N.Y. Sept. 22, 2014) (concluding that remand was necessary

where the ALJ presented the vocational expert with a "hypothetical [that] did not accurately reflect [plaintiff's] limitations," in part because the ALJ's RFC assessment was "colored" by findings erroneously made in violation of the treating physician rule); *see also Rivera v. Colvin*, No. 13-CV-07150, 2015 WL 1027163, at *18 (S.D.N.Y. Mar. 9, 2015) ("[B]ecause the ALJ must reassess the medical sources and reassess plaintiff's RFC, the ALJ may need to obtain further testimony from a vocational expert in the event that his new finding of RFC differs from the previous one.").[10]

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 10, is GRANTED, and the Commissioner's Cross-Motion for Judgment on the Pleadings, ECF No. 12, is DENIED.

The Commissioner's decision is vacated and this action is remanded for further administrative proceedings consistent with this Memorandum & Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

                                    */s/ Diane Gujarati*
                                    DIANE GUJARATI
                                    United States District Judge

Dated:  October 7, 2021
        Brooklyn, New York

---

[10] Because the Court remands this case for the reasons set forth above, the Court declines to address Plaintiff's remaining arguments, including Plaintiff's argument that the ALJ improperly assessed the medical opinion evidence with respect to Plaintiff's mental capacity. *See, e.g.*, *Colon v. Saul*, No. 20-CV-02113, 2021 WL 2827359, at *4 (E.D.N.Y. July 7, 2021); *Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-03542, 2015 WL 5657389, at *19 (E.D.N.Y. Sept. 23, 2015).